# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JACOB WAGNER,

      Plaintiff,

                                                    Case No. 15-10635

v.                                         HON. TERRENCE G. BERG

GRAND TRUNK WESTERN RAILROAD,

      Defendant.

_____/

## OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS (DKT. 10)

While working for Defendant Grand Trunk Railroad, Plaintiff Jacob Wagner cut his finger carrying a sharp metal siding with his bare hands. Plaintiff brings this lawsuit alleging that, because he reported his injury and filed an injury report, Defendant retaliated against him in violation of the Federal Railroad Safety Act, 49 U.S.C. § 20101 et. seq., ("FRSA"). Defendant claims that because Plaintiff already litigated his claim before the Secretary of Labor, that Plaintiff's claim must be dismissed. For the reasons explained below, Defendant's motion to dismiss (Dkt. 10) is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

This dispute originated nearly five years ago, on December 14, 2011. (Complaint, Dkt. 1, p. 4). On that cold, rainy day, Plaintiff, a unionized carpenter for Defendant Grand Trunk, was tasked with placing barn seam siding on a garage door outside of Defendant's building. (*Id*. at p. 4). After he finished, he went inside

and removed his safety gloves because they were wet and cold to the point of numbing his hands. (*Id.* at p. 5). Once inside, he observed a misplaced piece of metal siding in a walkway and decided to move it to prevent an accident. (*Id.*) He did not know that his supervisor had sheared the metal siding, making it sharper than normal. (*Id.*) As he picked it up with his bare hands, a part of the siding slipped from his grip and the sharp edge of the siding cut his finger. (*Id.* at p. 5).

Plaintiff immediately reported the injury to his supervisor and requested to be taken to the hospital. (*Id.* at pp. 6-7). Upon his return to work that same day, he detailed his injury in a "Report of Personal Injury or Occupational Illness" he filed with Defendant. (*Id.* at p. 7). As a result of his injury, Plaintiff received three-stitches. (ALJ Opinion, Dkt. 10, Ex. 2, p. 4).

Following his injury, Defendant began a disciplinary investigation into Plaintiff's alleged violation of workplace safety rules. (Notice of Investigation, Dkt. 1, Ex. D). Under the collective bargaining agreement, Plaintiff could only be disciplined if he were first charged with a rule violation and given an investigatory hearing.[1] (*Id.* at p. 7). After charging Plaintiff with a rule violation but prior to the hearing, Defendant allegedly offered Plaintiff a 10-day "probationary suspension"[2] in exchange for admitting wrongdoing and waiving his right to a hearing. (*Id.*) Plaintiff refused to waive his right to a hearing. (*Id.*) On January 18, 2012, after

---

[1] Plaintiff complains that these hearings are biased, perfunctory and lack basic procedural protections. (Dkt. 1, at pp. 7-8).

[2] The suspension was probationary because Plaintiff did not have to serve it so long as he did not violate other workplace rules during the probationary period. (*Id.* at p. 8)

conducting a hearing, Defendant concluded that Plaintiff had violated six workplace rules and imposed a 20-day non-probationary suspension. (Notice of Discipline, Dkt. 1, Ex. E).

On July 13, 2012, Plaintiff filed a complaint with the Secretary of Labor, via the Occupational Safety and Health Administration ("OSHA,") pursuant to § 20109(d)(1) of the FRSA. (OSHA Complaint, Dkt. 12, Ex. A). On February 18, 2014, OSHA found reasonable cause to believe that Defendant had violated the FRSA and awarded Plaintiff damages because Defendant did not show by clear and convincing evidence that it would have disciplined Plaintiff absent his protected activity.[3] (*Id.*) On March 10, 2014, Defendant objected to OSHA's ruling and requested a hearing before an ALJ. (Defendant's Objection and Request for a Hearing, Dkt. 12, Ex. C). During the course of the ALJ's proceedings, the parties took discovery and participated in a hearing where they presented exhibits and witnesses. (Joseph D. Weiner, Decl., Dkt. 8, p. 1).

Defendant claims that following a two-day hearing in July 2014, the ALJ raised several FRSA cases where the plaintiffs had removed their cases to federal court under the FRSA's "kick out" provision after receiving a decision on the merits from the ALJ. (*Id.* at p. 3). The ALJ then allegedly remarked that she considered those removals wasteful and improper. (*Id.*). In response, Defendant claims that Plaintiff's counsel James Kaster told the ALJ, in Plaintiff's presence, that Plaintiff would not remove the case to federal court because Plaintiff had "chosen his venue."

---

[3] OSHA awarded Plaintiff $29,671 in lost wages, $2,119 in lost vacation pay, interest on lost wages, and attorneys' fees associated with filing the OSHA complaint. (Dkt. 12, Ex. B, p. 3).

(*Id.*)  Plaintiff disputes this version of events.  According to Plaintiff's counsel, while discussing the upcoming briefing schedule, the ALJ asked whether Plaintiff would be removing the case to federal court prior to her issuance of a decision.  (James Kaster Affidavit, Dkt. 12, p. 1).  Plaintiff's counsel states that he responded that he had "no intention of removing his case to federal district court at that time."  (*Id.*)  Plaintiff's counsel further asserted during oral argument that this conversation occurred in the ALJ's chambers, and not in Plaintiff's presence.  This conversation was off the record.

On January 9, 2015, the ALJ released a 23-page opinion finding against Plaintiff.  (ALJ Opinion, Dkt. 10, Ex. 2).  The ALJ reasoned that Plaintiff was not entitled to damages under the FRSA because the Defendant would have disciplined him whether or not he had engaged in protected conduct.  (*Id.*)  On January 23, 2015, Plaintiff appealed the ALJ's order to the Appeals Review Board ("ARB").  (Dkt. 12, Ex. G).  On January 26, 2015, Plaintiff filed a notice of intent to file suit in federal court pursuant to 49 U.S.C. § 20109(d)(3).  (Dkt. 12, Ex. H).

On February 19, 2015, Plaintiff filed this lawsuit against Defendant.[4]  (Dkt. 1).  In his complaint, Plaintiff raises a single count of retaliation for engaging in protected activities under the FRSA, 49 U.S.C. § 20109(d)(1).  (*Id.*)  The complaint claims that Plaintiff participated in protected activity in three instances: (1) when he reported his injury to his supervisor; (2) when he submitted an injury report to

---

[4] In addition, Plaintiff originally filed suit against Canadian National Railway Company ("CNR,") an alleged joint employer.  (Dkt. 1).  On July 28, 2015, Plaintiff stipulated to the dismissal of his claims against CNR with prejudice.  (Dkt. 25).

4

Defendant; and (3) when he refused to waive his right to a hearing. (*Id.* at p. 13). After receiving a copy of Plaintiff's federal complaint, the ARB dismissed Plaintiff's OSHA complaint on February 27, 2015. (ARB Dismissal, Dkt. 12, Ex. I). On March 25, 2015, Defendant filed a motion to dismiss. (Dkt. 7). Following full briefing, the Court held oral argument on January 13, 2016.

## II. ANALYSIS

### A. Standard of Review

A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

5

**B. Discussion**

The FRSA prohibits a railroad from discriminating against employees for notifying or attempting to notify the railroad or the Secretary of Labor of a "work-related personal injury or work-related illness[.]" 49 U.S.C. § 20109(a)(4). An employee who believes that he has been discriminated against in violation of this provision can seek relief by filing an administrative complaint with the Secretary of Labor. 49 U.S.C. § 20109(d)(1). The FRSA also allows the employee to pursue an action in federal court if the Secretary does not decide the case within 210 days. This part of the FRSA, called the "kick out" provision, 49 U.S.C. § 20109(d)(3), is at issue in this case. It provide as follows:

> With respect to a complaint under paragraph (1), if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

Plaintiff brings the instant lawsuit under the authority of this provision. Defendant objects to Plaintiff's use of this provision and raises four separate grounds for dismissing Plaintiff's FRSA complaint, including that: (1) Plaintiff waived his right to remove; (2) Plaintiff engaged in bad faith; (3) Plaintiff is barred by res judicata; and (4) § 20109(d)(3) is unconstitutional. The Court will address each ground in turn.

1. **Waiver**

Defendant asserts that Plaintiff waived his right to exercise the "kick out" provision when his counsel told the ALJ that Plaintiff would not remove the case to federal court because he had "chosen his venue." (Joseph Weiner Decl., Dkt. 8). At the 12(b)(6) stage, "a court may consider only matters properly a part of the complaint or pleadings." *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). Where a court does not exclude matters outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56" and the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Weiner declaration is an example of evidence that falls outside of the pleadings. Rather than convert this motion into a motion for summary judgment, the Court will not consider this declaration.[5] Because Defendant's waiver argument relies entirely on his counsel's outside-the-complaint declaration, it is not properly before the Court for purposes of this motion to dismiss. The Court notes, however, that the Weiner declaration would not be sufficient to prove waiver in any case. Defendant claims that following a two-day hearing in July 2014, that Plaintiff's

---

[5] The Court will rely, however, on the Department of Labor's proceedings below. "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). This includes "the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority." *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968). Consequently, a "court's review of the administrative record . . . does not convert [a] motion to dismiss into one for summary judgment." *Smith v. Huerta*, No. 2:12-CV-02640-JTF, 2013 WL 3242492, at *3 (W.D. Tenn. June 25, 2013).

counsel James Kaster told the ALJ, in Plaintiff's presence, that Plaintiff would not remove the case to federal court because Plaintiff had "chosen his venue." (Joseph Weiner Decl., Dkt. 8, p. 3). Plaintiff disputes this version of events and claims that his counsel only told the ALJ that Plaintiff would be not remove the case to federal court prior to her issuance of a decision. (James Kaster Affidavit, Dkt. 12, p. 1). As this conversation occurred off the record, the Court has no basis for evaluating which party's version of events is correct. In any event, Defendant's off-the-record contested version of events provides insufficient grounds for the Court to conclude that Plaintiff knowingly and voluntarily waived his statutory right to remove the case to federal court.

### 2. Bad Faith

Defendant next contends that Plaintiff engaged in bad faith by exercising his statutory rights to file his complaint in federal court. Under § 20109(d)(3), a plaintiff can file their FRSA claim in federal court "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and *if the delay is not due to the bad faith* of the employee." (emphasis added). Bad faith is defined as "dishonesty of belief, purpose, or motive." Black's Law Dictionary (10th ed. 2014). Importantly, any alleged bad faith of the employee is only relevant if it causes the Secretary's delay.

Defendant argues that Plaintiff engaged in bad faith by participating in the administrative process while knowing that he could exercise the "kick out" provision if he received an adverse result. No court has found that merely exercising the

"kick out" rights conferred under § 20109(d)(3) constitutes bad faith. *See Lynch v. Union Pacific R. Co.*, 24 F. Supp. 3d 597, 559-560 (N.D. Tex. 2014) (finding no bad faith even where the plaintiff delayed OSHA's findings by seeking further investigation of his claim); *Pfeifer v. Union Pacific R. Co.*, No 12-cv-2485-JAR-JPO, 2013 WL 1367054 at *5, (D. Kan. Apr. 3, 2013) (finding no bad faith where the plaintiff obtained an extension of time from OSHA or where he filed a protective appeal simply to preserve his right to remove his case to federal court).

Plaintiff filed his complaint with the Secretary on July 31, 2012. (OSHA Complaint, Dkt. 12, Ex. A). On February 12, 2013, Plaintiff gained the right to remove this case to federal court because the Secretary had not issued a final decision within 210 days from the filing of his complaint. Defendant fails to identify any bad faith conduct by Plaintiff that allegedly caused the Secretary to exceed the 210-day time limit. Certainly, Plaintiff's participation in the administrative process, followed by his exercise of his statutory rights under § 20109(d)(3), cannot be said to constitute bad faith, even if it prolonged this litigation. As stated by the court in *Gunderson v. BNSF Ry. Co.*, 29 F. Supp. 3d 1259, 1262 (D. Minn. 2014) (citing *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 248 (4th Cir. 2009) (internal quotation marks omitted)

> A natural result of the aggressive [210-day] timeframe is that efforts will be duplicated when the DOL engages in a thorough, yet administratively non-final, process that fails to resolve the administrative case within the prescribed timeframe. Neither the Secretary nor the courts have the authority to engage in creative interpretation of the statute to avoid duplication of efforts, even if the goal for doing so is laudable.

As the cases cited above demonstrate, the general rule is that removal pursuant to § 20109(d)(3), even where it leads to the duplication of efforts and engenders frustration, does not constitute bad faith. The Court sees no convincing reason that this rule should not apply in this case.

### 3. Res Judicata

The Court now turns to Defendant's res judicata (claim preclusion) and collateral estoppel (issue preclusion) arguments. Defendant argues that because Plaintiff litigated his claim in the administrative proceedings below, he is now barred from litigating before this Court.

It is undisputed that final administrative decisions can have preclusive effects in some circumstances. *See Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir. 1971). "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* Issue preclusion encompasses collateral estoppel. *Id.* at n. 5. Res judicata,

including both claim preclusion and collateral estoppel, is a "common-law concept." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997).

Congress has the authority to displace the common law by enacting a statute. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 827 (6th Cir. 2013). To the extent that § 20109(d)(3) allows an employee to pursue claims that, in the absence of this statute, might be barred by res judicata or collateral estoppel, Congress had the power to authorize such claims. The statute provides for *de novo* review before a district court "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee[.]"

Every court that has addressed this issue has held that the § 20109(d)(3) entitles an employee to *de novo* review where the Secretary has not issued a final decision, and where 210 days have passed from when an employee files his complaint with the Secretary.[6] *See Glista v. Norfolk Southern Ry. Co.*, No. 13-04668, 2014 WL 1123374, at *1 (Mar. 21, 2014 E.D. Pa. 2014); *Gunderson v. BNSF Ry. Co.*, 29 F. Supp. 3d 1259, 1262 (D. Minn. 2014) ("every court to have addressed the matter has held that the plain statutory language gives employees the right to seek de novo review in federal court"); *Lynch v. Union Pacific R. Co.*, 24 F. Supp. 3d 597, 601-02 (N.D. Tex. 2014); *Norfolk Southern Ry. Co. v. Solis*, 915 F. Supp. 2d 32, 45 (D.D.C. 2013); *Pfeifer*, No 12-cv-2485-JAR-JPO, 2013 WL 1367054 at *1.

---

[6] While acknowledging that the case law does not support its position, Defendant fails to address the unanimous chorus of cases that reject its arguments.

Thus, the key question before the Court is whether the Secretary issued a final decision before Plaintiff filed suit in this Court.[7] Defendant argues that the ALJ's decision was a final decision of the Secretary because Plaintiff was able to extensively litigate his claim and obtained a 23-page decision from the ALJ. The problem with this argument is that the ALJ's January 9, 2015 decision never became final because Plaintiff timely appealed to the ARB on January 23, 2015. (Dkt. 12, Ex. G). Therefore, at the time this lawsuit was filed, on February 19, 2015, the Secretary had not yet issued a final decision. In addition, the ARB did not dismiss Plaintiff's OSHA complaint until February 27, 2015, after it received a copy of Plaintiff's federal complaint. (ARB Dismissal, Dkt. 12, Ex. I); *cf. Mullen v. Norfolk Southern Ry. Co.*, No. 2:14-cv-00917, 2015 WL 3457493, at *11 (W.D. Pa May 29, 2015) (holding that the Secretary issued a final decision where the employee did not file a federal complaint until 113 days after the ARB dismissed his OSHA complaint).

"[A] non-final agency decision is not entitled to a res judicata effect." *Pfeifer*, No 12-cv-2485-JAR-JPO, 2013 WL 1367054 at *5. Since the Secretary did not issue

---

[7] Some courts have held that under the plain meaning of the statute, an employee can still obtain *de novo* review even after the Secretary issues a final decision, provided that no final decision had been issued within 210 days of when the employee filed his complaint with the Secretary. *See Glista*, No. 13-04668, 2014 WL 1123374, at *3. Others hold that once the Secretary issues a final decision, an employee can no longer obtain *de novo* review, even if the final decision comes 210 days after an employee files his complaint with the Secretary. *Mullen v. Norfolk Southern Ry. Co.*, No. 2:14-cv-00917, 2015 WL 3457493, at *11 (W.D. Pa May 29, 2015) (stating that the "kick out" provision does not "grant a claimant an unlimited right to bring a duplicative suit in a federal district court even after an authorized final decision has been issued by the Secretary."). The Court need not enter into this dispute, because, as explained below, the Secretary never issued a final decision on Plaintiff's complaint.

a final decision, under the plain meaning of § 20109(d)(3), Plaintiff is entitled to *de novo* review, and the ALJ's decision has no res judicata or collateral estoppel effect.

### 4. Constitutionality of § 20109(d)(3)

Finally, Defendant raises an "as-applied" challenge to the constitutionality of § 20109(d)(3), arguing that this provision violates its constitutional rights to due process and equal protection. In an "as-applied" challenge, the party challenging the constitutionality of a statute needs to show that "that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) (internal citation omitted). "Therefore, the constitutional inquiry in an as-applied challenge is limited to the [party's] particular situation." *Id*. The Court will address Defendant's due process and equal protection arguments in turn.

#### a. *Due Process*

Defendant contends that § 20109(d)(3) violates its procedural due process rights because it allowed only Plaintiff to seek *de novo* review before this Court while it unfairly denied Defendant the option to file suit in this Court if it lost before the ALJ. The statute, therefore, allows Plaintiff "a second bite at the apple" but not Defendant. In addition, it complains that the statute only allows Plaintiff to recover attorneys' fees.

Under the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." Before depriving a person of life, liberty or

property, "[d]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377 (1971). "The goal is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (internal quotation marks omitted).

*Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005), presents a typical case of a deprivation of due process. In *Warren*, a city deprived the plaintiffs of their due process rights when it erected barriers barring access into and out of the plaintiffs' business without first holding a hearing. *Id.* The city simply did not give the plaintiffs a meaningful opportunity to be heard prior to taking these actions. *Id.*

Here, Defendant is not complaining that it has received too little process—the gravamen of a due process claim—but rather that Plaintiff is receiving too much. Defendant contends that it is a denial of due process to permit Plaintiff to force Defendant to participate in additional legal process under § 20109(d)(3). This is not a cognizable due process claim. There is no question that Defendant has had and will have a meaningful opportunity to be heard in this Court. It has already filed pleadings and participated in oral argument as part of this motion.

Furthermore, as litigation proceeds, it will have access to the generous discovery provided by the Federal Rules, and an impartial tribunal.

Moreover, Defendant has failed to provide any authority in support of its argument that Plaintiff's unilateral statutory right to obtain *de novo* review in federal court rises to the level of a deprivation of due process. And to the extent that Defendant claims that the process is unduly burdensome, the burden of additional litigation falls evenly on both parties. Moreover, while Defendant's assertions that this suit involves the same witnesses, discovery, and issues as the proceedings below may be true, such duplication does not amount to a due process violation. If anything, it suggests that the parties should be able to streamline the discovery process in this proceeding.

Lastly, as another court has noted, "Section 20109 is far from unique in providing for de novo review in district court if the Secretary fails to issue a final administrative order within a specified period. *See, e.g.,* 18 U.S.C. § 1514A(b) (whistleblower protection for employees of companies subject to the Sarbanes–Oxley Act); 49 U.S.C. § 31105(c) (whistleblower protection for commercial motor-vehicle employees); 42 U.S.C. § 5851(b)(4) (whistleblower protection for nuclear-industry employees); 49 U.S.C. § 30171(b)(3)(E) (whistleblower protection for automobile-manufacturing employees); 6 U.S.C. § 1142(c)(7) (whistleblower protection for public-transit employees); 12 U.S.C. § 5567(c)(4)(D) (whistleblower protection for consumer-finance employees); 15 U.S.C. § 2087(b)(4) (whistleblower protection for consumer-products employees); 21 U.S.C. § 399d(b)(4) (whistleblower protection for

15

employees in food and drug industries).” *Gunderson v. BNSF Ry. Co.*, 29 F. Supp. 3d at 1262 n.3. Defendant has failed to provide a single example calling into question the constitutionality of § 20901(d)(3) or of any similar provision.

Because § 20109(d)(3) does not deprive Defendant of a meaningful opportunity to be heard, it does not violate his procedural due process rights.

### b. *Equal Protection*

Defendant next argues that § 20109(d)(3) violates equal protection because it only allowed Plaintiff to remove the case for *de novo* review. Defendant contends that this violates its fundamental right to due process and fails under the strict scrutiny test. "An equal protection claim against the federal government is analyzed under the Due Process Clause of the Fifth Amendment. As the Supreme Court has held '[e]qual protection analysis in the Fifth Amendment area is the same as that under the [Equal Protection Clause of the] Fourteenth Amendment.'" *United States v. Ovalle*, 136 F.3d 1092, 1095, n. 2 (6th Cir. 1998) (citing *Buckley v. Valeo*, 424 U.S. 1, 93 (1976)). "The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). "The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.*

Courts only apply strict scrutiny review where a government classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Ret. v. Murgia*, 427

U.S. 307, 312 (1976). Recognized fundamental rights include, for example, the right to vote, to interstate travel, and to procreate. *Id.* at n. 12.

As a threshold matter, the "kick-out" provision of § 20109(d)(3) is not properly subject to strict scrutiny review. Defendant argues that it has a fundamental right to meaningful access to the judicial process. This argument conflates fundamental rights with procedural due process. As discussed in the section above, procedural due process encompasses the right to meaningful access to the judicial process. Fundamental rights, like the right to vote, to procreate, or to travel are distinct and recognized not under the Due Process Clause's guarantee of fair process, but under its guarantee of liberty. *Washington v. Glucksberg*, 521 U.S. at 719. Because the right to meaningful access to the judicial process is not a fundamental right under the Due Process Clause, § 20109(d)(3) is not subject to strict scrutiny review.

Without a fundamental right at issue, the statute is reviewed under the rational relationship test. "If legislation neither burdens a fundamental constitutional right nor targets a suspect classification, it will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate government interest." *Olympic Arms, et al. v. Buckles*, 301 F.3d 384, 388 (6th Cir. 2002). "Rational basis scrutiny, a deferential review, only requires a state of facts that provide a conceivable basis for the classification." *Breck v. State of Mich.*, 203 F.3d 392, 395 (6th Cir. 2000). "Rational basis review does not assess the wisdom of the challenged regulation." *Id.*

As Defendant concedes, § 20109(d)(3) is rationally related to the Congress's interest in assisting railroad employees in obtaining a "speedy resolution of their claims." (Dkt. 10, p. 23). This justification, standing alone, is an adequate rational basis for Congress's decision to allow railroad employees, but not the railroad employers, the power to remove to federal court if the administrative process takes more than 210 days before it becomes final. Regardless of whether § 20109(d)(3) has achieved the purpose Congress intended, the Court cannot conclude that it lacked a reasonable basis for making this distinction in the procedures available to employees and employers. "The statute, as currently written . . . regrettably does nothing to promote judicial economy. It is, however, the task of Congress and not this court to remedy such an unintended outcome." *Lynch*, 24 F. Supp. 3d at 601-02.

//

//

//

//

//

//

//

//

//

//

### III. CONCLUSION

Finally, the Court declines Defendant's invitation to assess costs or to stay these proceedings under Fed. R. Civ. P. 41(d)[8] as there is no basis for such an order. For the reasons explained above, Defendant's motion to dismiss is **DENIED**.

**SO ORDERED.**

Dated: March 23, 2016                s/Terrence G. Berg
                                     TERRENCE G. BERG
                                     UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 23, 2016, using the CM/ECF system, which will send notification to all parties.

                                     s/A. Chubb
                                     Case Manager

---

[8] Under Rule 41(d), courts may impose costs and stay proceedings where a plaintiff previously dismisses an action in any court and later files a separate action "based on or including the same claim against the same defendant[.]"