**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| JACOB WAGNER,<br><br>Plaintiff,<br><br>v.<br><br>GRAND TRUNK WESTERN RAILROAD,<br><br>Defendant. | Case No. 15-10635<br>Hon. Terrence G. Berg |

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DKT 45)**

**I. INTRODUCTION**

This is a workplace retaliation case. Plaintiff Jacob Wagner alleges that Defendant Grand Trunk Western Railroad retaliated against him in violation of the Federal Railroad Safety Act, 49 U.S.C. § 20101 et. seq., ("FRSA") by suspending him for 15 days because he reported an on-the-job injury. Defendant argues that it disciplined Plaintiff for not wearing the proper safety equipment, and that the evidence in this case is so clear that the Court must enter summary judgment in Defendant's favor. For the reasons outlined below, Defendant's motion is **DENIED**.

**II. BACKGROUND**

In December of 2011, Plaintiff cut his finger on sheared metal siding because he handled the siding without wearing gloves. Dkt. 45, Pg. ID 1160. Plaintiff and his coworkers were repairing a garage door using barn-seam siding. Dkt. 45, Pg. ID 1159. When the day began, Plaintiff was working outside in the cold rain and was wearing

gloves, but took off the gloves after moving inside because his hands were going numb. Dkt. 47, Pg. ID 1602. Once inside he noticed a piece of barn-seam siding sitting in a walkway and went to move it to prevent an accident. Dkt. 45-2, Pg. ID 1223. What he did not notice was that the siding had been sheared, making its edges sharper than normal. Dkt. 47-2, Pg. ID 1703. He picked up the siding with his bare hands, his grip slipped, and a sharp edge cut his finger. Dkt. 47-2, Pg. ID 1800.

Plaintiff reported his injury to his foreman and went to the hospital to get stitched up. Dkt. 47-2, Pg. ID 1802. He returned to work the same day, and detailed what had happened in a "Report of Personal Injury or Occupational Illness." Dkt. 47-2, Pg. ID 1845; Dkt. 1-4. The Report triggered an investigation, where Defendant inquired whether Plaintiff had violated any workplace safety rules. Dkt. 45, Pg. ID 1161. Under the collective bargaining agreement in place, if after the investigation Defendant concluded that Plaintiff had violated one or more rules, a hearing was required before Defendant could impose any discipline. Dkt. 45, Pg. ID 1161. Defendant believed that Plaintiff had violated the company's safety rules and sought to discipline him, and so a hearing took place in January of 2012. Dkt. 45, Pg. ID 1162. Lawrence Wizauer, an Operations Supervisor for Defendant who presided over the hearing, concluded that Plaintiff had violated multiple rules, and as a result Defendant suspended Plaintiff from work for 20 days, but called him back to work after he had served 15 days of the suspension. Dkt. 45, Pg. IDs 1162-1164.

Plaintiff challenged the penalty by filing a complaint with the Secretary of Labor, by way of the Occupational Safety and Health Administration ("OSHA"), pursuant to

§ 20109(d)(1) of the FRSA. Dkt. 45, Pg. ID 1167. OSHA found reasonable cause to believe that Defendant violated the FRSA, and awarded damages to Plaintiff. Dkt. 47, Pg. ID 1601. Defendant objected to OSHA's ruling and requested a hearing before an Administrative Law Judge. Dkt. 45-2, Pg. ID 1485. A hearing was scheduled, and in preparation the parties took discovery. Dkt. 45, Pg. ID 1167. The parties presented evidence at the hearing, and the ALJ ultimately found for Defendant. Dkt. 45, Pg. ID 1167. Plaintiff appealed to the Appeals Review Board (ARB), Dkt. 12-2 Pg. ID 640, but then filed a notice of intent to file suit in federal court and did so in February of 2015. Dkt. 1. After receiving a copy of Plaintiff's federal complaint, the ARB dismissed Plaintiff's appeal. Dkt. 12-2 Pg. ID 676.

Plaintiff raises a single count of retaliation for engaging in protected activities under the FRSA, 49 U.S.C. § 20109(d)(1). Dkt. 1. Plaintiff alleges that he participated in protected activity in three ways (1) by reporting his injury to his foreman; (2) by submitting an injury report to Defendant; and (3) by refusing to waive his right to a hearing. Dkt. 1, Pg. ID 13. He also alleges that Defendant retaliated against him in three ways: (1) by suspending him; (2) by increasing the severity of his discipline after he refused to waive his right to a hearing; and (3) by deeming him a "needs improvement" employee. Dkt. 1, Pg. ID 13. Defendant has moved for summary judgment, Dkt. 45, which Plaintiff opposes. Dkt. 47. Following full briefing, the Court held oral argument on November 14, 2016.

III. ANALYSIS

A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)).

4

B. Discussion

In 1970, Congress enacted the FRSA, a statutory scheme intended to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (quoting 49 U.S.C. § 20101). The original version did not prohibit railroad carriers from retaliating against employees, but Congress amended the Act in 1980 to include an anti-retaliation provision. *See* Federal Railroad Safety Authorization Act of 1980, Pub. L. 96-423, § 10, 94 Stat. 1811 (1980); *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 509-10 (6th Cir. 2015). After a series of additional amendments, the FRSA now prohibits a railroad carrier from discharging, demoting, suspending, reprimanding, or in any other way discriminating against an employee because the employee reports a workplace injury. *See Ortiz v. Grand Trunk W. R.R. Co.*, 2014 U.S. Dist. LEXIS 132666, at *14 (E.D. Mich. 2014) (citing 49 U.S.C. § 20109(a) and *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 156 (3d Cir. 2013)).

The FRSA incorporates the burden-shifting approach applicable to whistleblower claims arising under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"). 49 U.S.C. §42121(b)(2)(B)(i)-(ii). Thus, to prevail on a FRSA retaliation claim, an employee must show that "(1) he engaged in protected activity; (2) the employer knew that he engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action." *See Ortiz,* 2014 U.S. Dist. LEXIS 132666, at *15-16. "The employee bears the initial burden, and must show 'by a

5

preponderance of the evidence that protected activity was a contributing factor in the adverse action alleged in the complaint.'" *Id*. Once Plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to demonstrate "by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior." *Id*.

Here, Defendant argues that it is entitled to summary judgment for two reasons. First, Defendant submits that there is no genuine issue of material fact concerning whether Plaintiff's injury report was a contributing factor in Defendant's decision to suspend Plaintiff, and that no reasonable jury could find that Plaintiff has made a *prima facie* case that the report was a contributing factor. Dkt. 45, Pg. IDs 1168-1173. Second, Defendant submits that the evidence also would require a jury to find that Defendant would have suspended Plaintiff even if he had not reported his injury report. Dkt. 45, Pg. IDs 1173-1176. The Court considers each argument in turn.

### 1. Plaintiff's *prima facie* showing

In challenging Plaintiff's ability to make his *prima facie* case of retaliation, Defendant argues only that Plaintiff's injury report was not a contributing factor to Defendant's decision to suspend him. Dkt. 45, P. IDs 1168-1173. Thus the first three prongs of Plaintiff's *prima facie* case are uncontested: Plaintiff filed an injury report, Defendant knew that he filed it, and Defendant suspended him. The contributing-factor prong is all that remains. How the Court should analyze that prong, however, is uncertain; the Sixth Circuit has yet to confront the contributing-factor analysis head on, and the other circuits are split on the issue.

The Third Circuit was the first to address the contributing-factor analysis as applied under the FRSA. In *Araujo v. New Jersey Trans. Rail Operations, Inc.*, the Third Circuit adopted the definition of a "contributing factor" from the Federal Circuit's opinion in a Whistleblower Protection Act case (which uses the same burden-shifting framework as the FRSA): "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." 708 F.3d 152 (3d Cir. 2013) (quoting *Marano v. Dep't of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993)).

The Sixth Circuit adopted *Araujo*'s definition in *Consolidated Rail Corp. v. United States Dep't of Labor*, but then concluded that in its case there was "substantial evidence that *animus* was a contributing factor" in the plaintiff's termination. 567 F. App'x 334, 338 (6th Cir. 2014). Importantly, in *Consolidated Rail* the Sixth Circuit was not asked to clarify the scope of the term "contributing factor," so it did not hold that showing some form of retaliatory animus was the only way to meet the factor.

The Eighth Circuit referenced *Consolidated Rail* when noting that "the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity," but did so in its discussion of whether the employer had knowledge of the employee's protected activity. *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014).

Finally, the Seventh Circuit recently departed from *Araujo* completely, and instead adopted a proximate cause standard. *Koziara v. BNSF Railway Co.*, 2016 WL 6407246 at *4 (7th Cir. 2016).

Defendant relies on *Araujo*, *Consolidated Rail*, and *Kuduk* as authority for the proposition that that Plaintiff "must demonstrate retaliatory animus." Dkt. 45, Pg. ID. 1170. Plaintiff disagrees, and responds that the test is the same under both *Araujo* and *Consolidated Rail* and does not change based on *Kuduk*'s reference to *Consolidated Rail*. Dkt. 47, Pg. ID. 1608-1611.

Plaintiff is correct. In *Consolidated Rail* the Sixth Circuit did not define the contributing-factor test's contours: it did not definitively say what kind of proof an employee must present to establish that a protected activity was a contributing factor to an allegedly retaliatory employment action. And *Kuduk*'s use of the term "intentional retaliation" came in its discussion of whether the plaintiff could even show that the defendant had knowledge of the plaintiff's protected activity. In other words, the point that the *Kuduk* court was making was that an employee's protected activity must be known to the employer for the activity to contribute to the employer's decision. The state of the law in this Circuit is not sufficiently clear to conclude that Plaintiff *must* provide evidence of discriminatory animus to meet the contributing factor prong of his *prima facie* showing. But even if Plaintiff had to make that showing, the genuine issues of fact in this case are sufficient to permit a jury to find discriminatory animus and then conclude that Plaintiff has made his *prima facie* showing on the contributing-factor prong.

An employee can demonstrate that his protected activity was a contributing factor in his employer's adverse employment decision through either direct or

8

circumstantial evidence. Neither party argues that there is direct evidence in the record, so the Court must look for circumstantial evidence.

Courts have referenced the following categories of proof as examples of circumstantial evidence that a protected activity was a contributing factor to a negative employment action:

- Temporal proximity;
- Indications of pretext;
- Inconsistent application of an employer's policies;
- Shifting explanations for an employer's actions;
- Antagonism or hostility toward a complainant's protected activity;
- Falsity of an employer's explanation for the adverse action taken; and
- Change in the employer's attitude toward the complainant after he engages in protected activity

*Kuduk v. BNSF Ry. Co.*, 980 F. Supp. 2d 1092, 1101 (D. Minn. 2013). Here, Plaintiff has shown indications of pretext sufficient to permit a reasonable jury to find that he has made a *prima facie* showing that his injury report contributed to Defendant's decision to suspend him.

a. *Indications of Pretext*

"A plaintiff can demonstrate pretext by showing that the employer's proffered reason for the adverse action (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 513 (6th Cir. 2016) (citations omitted).

9

Defendant argues that Plaintiff can make no showing of pretext, and provides two reasons for support. First, Defendant submits that it has consistently explained and demonstrated that it was Plaintiff's failure to wear gloves that caused Defendant to suspend him. Dkt. 45, Pg. ID 1170. Second, Defendant submits that it once disciplined another worker for using a chainsaw without wearing chaps, even though that worker did not report an injury. Dkt. 45, Pg. ID 1170.

In response, Plaintiff argues that the safety rules, on their face, do not prohibit his conduct; they say that gloves "may be required" rather than making gloves mandatory. Dkt. 47, Pg. IDs 1604, 1612. Plaintiff submits that he had discretion to decide whether to wear gloves, and that these two reasons, alone, would permit a reasonable jury to find pretext, and from that, to infer that his reporting an injury was a contributing factor. Dkt. 47, Pg. ID 1612.

Defendant replies that Plaintiff's position "strains credulity" because the rules state that "gloves may be required when lifting and carrying certain materials" and "provide employees some discretion," but "common sense dictates" that he should have been wearing them. Dkt. 45, Pg. IDs 1170-1171. Defendant submits that "permissive language does not allow an employee to check common sense at the door and plead ignorance of his responsibility to wear proper PPE for the task at hand." Dkt. 45, Pg. ID 1171. And Defendant further contends that the rules prohibited Plaintiffs conduct because "there is no doubt gloves must be worn when working with razor-sharp metal"—indeed, Defendant makes the bold statement that "[t]he rule is clear: wear gloves when handling dangerous material." Dkt. 48, Pg. ID 2271.

Defendant's arguments are unavailing. Here is the relevant rule chart:

| Engineering General PPE Requirements<br><br>R = Required equipment<br>X = May be required based on task and materials<br>✓ = Recommended additional equipment | Hearing Protection | Gloves | Rubber Gloves | Goggles | Faceshield | Shin Guards | Respiratory Protection Contact Safety Department |
|---|---|---|---|---|---|---|---|
| Chop saw | R | R | | | R | | |
| Cleaning agents: spraying/general use | | X | X | X | X | | X |
| Climbing equipment | | R | | | | | |
| Climbing poles and rail/work equipment | | R | | | | | |
| Cut-off disks, saws, or other tools with carbide bits | R | R | | | R | | |
| Cutting rivets, bolts, or cotter keys; splitting nuts; etc. (mechanically) | R | R | | | R | | |
| Cutting rivets, bolts, or cotter keys; splitting nuts; etc. (mechanically with torch) | R | R | | R | | | |
| Dusty conditions | | | | | | | X |
| Electrical hazard | | X | | | | | |
| Electrical welding | R | R | | | | | X |
| Gas welding, cutting, or heating | X | R | | | | | X |
| Hammer-punch | R | R | | | | | |
| Hand tools | X | X | | | | | |
| Intermodal facility: outside of offices | R | X | | | | | |
| Lifting and carrying | | X | | | | | |
| Machining steel, iron, or other metals | R | X | | | | X | |
| MIG/TIG welding | R | R | | | | | X |

Dkt. 45-2, Pg. ID 1437.

As shown in the key in the upper left-hand corner, there are three options: "R" (Required equipment); "X" (May be required based on task and materials) and "✓" (Recommended additional equipment). The third row from the bottom references

the task description at issue here. For there to truly be "no doubt" that Plaintiff needed to wear gloves when lifting and carrying the sheared metal, there should be an "R" in the "Gloves" column. But there is an "X" there, indicating that gloves may (or may not) be required based on the task and materials. This rule seems to leave the worker and his foreman some discretion.

To be sure, the rules are not a model of clarity. In stating gloves "may be required," the rules leave open the question of how a worker should know when gloves are or are not required in any given situation, or who makes that call. Defendant has not identified any additional rule that tells employees how to determine whether something that *might be* required actually *is* required. Instead, Defendant points to "common sense." Dkt. 45, Pg. ID 1171. But Defendant cannot, with the benefit of hindsight, rely on a combination of an ambiguous rule ("may be required") and an even more ambiguous concept ("common sense") to obtain summary judgment.

Defendant's second argument is that in the past it disciplined another employee for not wearing protective equipment even where that employee did not report any injury. Defendant suggests that this shows that Plaintiff's injury report could not have been a contributing factor in its decision to discipline him because safety is so important that the company disciplines failure to wear protective gear as a matter of course—not in retaliation. But the example Defendant relies upon is quite different from Plaintiff's experience; operating a chainsaw without chaps is not the same as picking up siding without gloves. The activities are different (power sawing v. lifting metal), and so are the types of personal protective equipment that Defendant claims

must be worn (chaps v. gloves). Defendant cannot rely on a prior unrelated incident involving a different activity and different allegedly required[1] protective equipment to overcome the uncertainty of whether, on these facts, Plaintiff's injury report contributed to Defendant's decision to impose discipline. This argument is also insufficient for Defendant to win summary judgment.

In short, whether the safety rules required Plaintiff to wear gloves when picking up the barn-seam siding is an issue of material fact. Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could find that the rule, given its less than clear language, did not *require* Plaintiff to wear gloves. Further, the jury could determine that Plaintiff had discretion to wear gloves depending on his assessment of the safety risk in view of the task and materials. Therefore, the jury could conclude that Plaintiff did not violate any safety rules,[2] meaning Defendant's proffered reason

---

[1] The same rules chart depicted above (on its second page not here reproduced) includes the task description for operating a chainsaw and the same protective gear options. Out of those options, the closest thing to "chaps" is "shin guards." Defendant has not stated that the two are equivalent, but, regardless, the rule chart nowhere requires chaps or shin guards when operating a chain saw. Gloves, hearing protection, and a face shield are required; the chart indicates an "R" for each option. But under the column for "shin guards" there is nothing, not even a "✓" for "recommended." So it is not clear to the Court what rule Defendant relied upon in disciplining the employee who used a chainsaw without wearing chaps. In any event, what *is* clear is that the two events Defendant seeks to compare are materially different.

[2] The other rules Defendant accuses Plaintiff of having violated (besides not wearing gloves) all trigger only if Plaintiff was required to wear gloves. For example, one rule requires Plaintiff to "Know, wear, and maintain approved personal protective equipment (PPE) and clothing as required by job task and/or work environment, including off-site industries as required." The chart above is what would determine whether gloves were required by the task and environment.

for suspending Plaintiff (violating the rules) had no basis in fact and was insufficient to warrant suspension (because Plaintiff didn't violate them). If the jury reached such a conclusion, it could also conclude that Plaintiff made out a *prima facie* showing that his injury report contributed to Defendant's decision to suspend him.

### 2. Defendant's burden to show by clear and convincing evidence that it would have imposed the same discipline on Plaintiff even if he had not reported his injury

As noted above, if Plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to demonstrate "by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior." *See Ortiz*, 2014 U.S. Dist. LEXIS 132666, at *15-16. Defendant argues that there is no genuine issue of fact as to whether it has established by clear and convincing evidence that it would have suspended Plaintiff absent his report, and offers as support 16 reasons:

1. Defendant disciplined Plaintiff twice before for rule violations
2. Defendant disciplined another employee for failing to wear chaps while using a chainsaw, and this employee had not reported an injury
3. Twelve of the 14 reported injuries in the department where Plaintiff worked resulted in no discipline
4. A third employee who violated a rule by using accelerants in a fire and caused an explosion admitted responsibility for the violation and received discipline
5. That third employee later reported an injury from a separate incident and received no discipline
6. The two other employees who Defendant disciplined received the discipline because of clear rule violations

14

7. Plaintiff is the only employee in the his department to receive discipline for two rule violations in a two-month period, and for three rule violations in a three-year period

8. All of Plaintiff's discipline stemmed from the same type of rule violation: rushing the activity

9. Defendant's policies prohibit a supervisor from disciplining an employee for getting injured

10. It is important to have safety rules

11. Defendant wants accurate injury reporting so it can improve its safety plans to better protect its employees

12. Had Plaintiff's foreman seen Plaintiff's violation, he would have disciplined Plaintiff regardless of injury

13. Plaintiff has faced no animosity or ill treatment since the report

14. It is important for Defendant to focus on minor rule violations so those violations don't compound and create a major risk of harm

15. Plaintiff wore gloves the entire time he was installing the siding

16. Common sense dictates that one must wear gloves when handling sharp metal siding

Dkt. 45, Pg. ID 1174.

Plaintiff responds by returning to the same argument, that the rule did not on its face prohibit Plaintiff from picking up the siding without wearing gloves. Dkt. 47, Pg. ID 1616.

Defendant's arguments are unavailing. If the Court viewed the evidence in the light most favorable to Defendant, summary judgment might well be appropriate. But that is not the standard; the Court must give Plaintiff the benefit of the doubt. As noted above, whether the safety rules required Plaintiff to wear gloves is an issue of material fact and a reasonable jury could conclude from the evidence that Plaintiff did not actually violate any rules. (It could also reasonably find the opposite.) If the jury concluded that there was no rule violation, it could also conclude that the 16

reasons above do not constitute clear and convincing evidence that Defendant would have suspended Plaintiff even if he had not reported his injury. Plaintiff's argument for pretext directly attacks Defendant's proffered reason for the discipline. Thus, unlike cases where the discipline is justifiable for a reason unrelated to any protected activity and a plaintiff must argue that retaliatory reasons rather than the legitimate reason motivated the employer, Plaintiff's claim here is that there was never a legitimate reason to begin with. To be sure, a jury could conclude that Defendant simply misinterpreted the rule (reading it to require gloves when it did not) and therefore reached the wrong conclusion about whether Plaintiff violated it. But the jury would not be required to reach that conclusion; it could find that Defendant knew Plaintiff did not violate the rule but was so miffed by his injury report that it suspended him and then tried to hide behind the rule.

Defendant has strong evidence to support its position at trial—Plaintiff did not forgo gloves while picking up a box of tissues or some other seemingly innocuous item, he used bare hands to lift a long piece of the same kind of material that he had worn gloves to handle for the entire day leading up to that point—but this evidence is not sufficient to prevent the case from going to a jury.

*   *   *

Before concluding, the Court must note its disappointment that the parties have been unwilling or unable to reach a settlement in this matter. Five years ago, Plaintiff missed 15 days of work. Dkt. 45, Pg. ID 1164. The damages from that are not

substantial, but the attorneys' fees amassed from continuing this dispute are: two levels of administrative hearings; then to federal court with a motion to dismiss, a motion for summary judgment, and now a trial; then likely an appeal to the Sixth Circuit. The cost of this process is enormous, and far exceeds Plaintiff's lost wages. At oral argument, Defense counsel asserted bluntly that attorneys' fees are what has kept this case from settling. If Plaintiff prevails, he is entitled to recover those fees. When fees are high and mounting, it might be understandably difficult to place the proper emphasis on the client's best interests. But regardless of whether Plaintiff's counsel have given proper weight to their client's interests, for this case to go to trial is troubling in light of what Plaintiff had to say in 2014:

```
18    Q.   This litigation itself though is stressful for you?
19    A.   Yes.
20    Q.   And the continuation of this dispute is stressful?
21    A.   Correct.
```

Dkt. 47-2, Pg. ID 1863.

Perhaps Mr. Wagner no longer experiences stress from the continuing and expensive litigation of this dispute—the Court certainly hopes that is the case—but if he does, it is disturbing that the parties have been unable to find a fair and appropriate resolution of this dispute.

## IV. CONCLUSION

For the forgoing reasons, Defendant's motion is **DENIED**.

**SO ORDERED.**

Dated: February 24, 2017    s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically submitted on February 24, 2017, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager